JMR (AD)/2014R00187

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 18-608 (RMB) |
| v. | : | |
| STERLING WHEATEN | : | 18 U.S.C. §§ 242, 1519 and 2 |

### INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Camden, charges:

### COUNT 1
### [18 U.S.C. § 242 – Deprivation of Rights Under Color of Law]

Background

1. At all times relevant to this Indictment:

   a. The Atlantic City Police Department ("ACPD") was a duly constituted police agency responsible for providing law enforcement services to serve and protect the community of Atlantic City, New Jersey. ACPD Officers were authorized by the State of New Jersey to make lawful arrests.

   b. ACPD Officers who were selected to serve as K-9 officers attended the Atlantic County Police Training Center, also known as the John "Sonny" Burke Police K-9 Academy ("K-9 Academy"). The K-9 Academy has trained patrol and scent detection teams for over twenty-five years. Officers and their K-9 partners were instructed in the areas of K-9 patrol and scent detection. The K-9 patrol course covered all aspects of the patrol dog/handler

1

team instruction. Subject matter included obedience, agility, criminal apprehension, scent work and socialization.

### The Defendant and Other Individuals and Entities

c. Defendant STERLING WHEATEN was a resident of Margate, New Jersey. On or about August 30, 2007, defendant WHEATEN was sworn in as an ACPD Officer. On or about May 3, 2013, defendant WHEATEN graduated from the K-9 Academy with a certified Patrol K-9 "Hagan."

d. Hagan was a police dog in the service of the ACPD assigned to assist defendant STERLING WHEATEN.

e. Victim #1 was a 20-year-old-male who resided in Linwood, New Jersey.

f. Tropicana Hotel and Casino ("Tropicana") was located at Brighton and The Boardwalk in Atlantic City, New Jersey.

g. ACPD Officers #1 through #5 were other ACPD Officers who participated in the apprehension of Victim #1 outside the Tropicana.

### The Offense

2. On June 15, 2013, defendant STERLING WHEATEN was working in his official capacity as an ACPD Officer with his K-9 partner, Hagan, and was assigned to the city under Unit designation K9-2 or K2.

3. On June 15, 2013, after several ACPD Officers told Victim #1 to leave the area of the Tropicana, Victim #1 walked across Morris Avenue and began yelling threats and obscenities at the police officers.

4. After several minutes, ACPD Officer #1 decided to arrest Victim #1 and ran across the street toward him.

5. While ACPD Officer #1 and other officers attempted to grab Victim #1, Victim #1 pulled away and grabbed ACPD Officer #1 around the waist as Victim #1 was taken to the ground.

6. During the struggle, ACPD Officer #1 fell to the ground with Victim #1 on top of him. Three ACPD Officers, Officers #2 through #4, pulled Victim #1 from on top of ACPD Officer #1. The four officers then delivered knee strikes to Victim #1's shoulder and back, punches to Victim #1's back, and baton strikes to Victim #1's back and legs. Eventually, ACPD Officer #5 arrived and delivered two knee strikes to Victim #1 before successfully handcuffing Victim #1's left hand.

7. During the struggle, which lasted less than 2 minutes, ACPD Officers requested, via police radio, the assistance of a K-9 Officer. Defendant STERLING WHEATEN and his K-9 partner Hagan responded to the radio call.

8. When defendant STERLING WHEATEN arrived, Victim #1 was laying on his stomach with ACPD Officer #1 kneeling on Victim #1's head/neck area and several ACPD Officers were pressing on Victim #1's back and legs. At the time, ACPD Officer #5 had already placed one handcuff on Victim #1.

9. Defendant STERLING WHEATEN immediately took his K-9 partner Hagan out of the vehicle and ran directly at Victim #1 and the five ACPD Officers.

10. Upon seeing defendant STERLING WHEATEN and his K-9 partner Hagan approach, ACPD Officer #5 got off of Victim #1 while still holding the handcuff, which caused Victim #1's chest to be exposed to K-9 Hagan. Without issuing a warning that he would deploy the dog, or allowing Victim #1 a chance to surrender, defendant STERLING WHEATEN deployed/released K-9 Hagan and K-9 Hagan bit Victim #1 in the chest.

11. Victim #1 pushed K-9 Hagan off of his chest and rolled to his side. K-9 Hagan re-engaged Victim #1 and bit him on the back of his neck. Defendant STERLING WHEATEN did not immediately remove K-9 Hagan from the back of Victim #1 neck, but instead told K-9 Hagan to "hold" on Victim #1's neck.

12. During his training at the K-9 Academy, defendant STERLING WHEATEN was trained that the only type of K-9 apprehension that has resulted in the death of a suspect occurred when a K-9 bit a suspect on his neck and even though the K-9 was immediately recalled and medical care given, the suspect died.

13. While K-9 Hagan was biting the back of Victim #1's neck, defendant STERLING WHEATEN punched Victim #1 twice in the shoulder/neck area.

14. Eventually, Victim #1 was handcuffed and K-9 Hagan was placed into the police vehicle.

15. ACPD Officer #6 administered first aid to Victim #1's head and neck until paramedics arrived. Ultimately, Victim #1 was taken to AtlanticCare Regional Medical Center in Atlantic City, New Jersey in police custody where he was treated for dog bites to his head, neck and chest.

16. After Victim #1 was transported to the hospital, defendant STERLING WHEATEN and ACPD Officers #1 through #5, returned to the police station to prepare their reports.

17. Prior to writing the reports, ACPD Officer #1 obtained Tropicana's surveillance video of the assault. Defendant STERLING WHEATEN met with ACPD Officers #1 through #4 and they watched the security video from the Tropicana before preparing their police reports.

18. To justify his actions against Victim #1, defendant STERLING WHEATEN prepared and submitted false and fraudulent police reports.

The Charge

19. On or about June 15, 2013, in Atlantic County, in the District of New Jersey, and elsewhere, defendant

STERLING WHEATEN

while acting under color of the laws of the State of New Jersey, and aiding and abetting persons both known and unknown to the grand jury, caused a police dog to attack Victim #1 and punched Victim #1 while the police dog was attached to Victim #1, and thereby willfully deprived Victim #1 of a right secured and protected by the Constitution and laws of the United States, that

5

is, the right to be free from unreasonable seizure by one acting under color of law, which includes the right to be free from the use of unreasonable force. The offense resulted in bodily injury to Victim #1.

In violation of Title 18, United States Code, Section 242, and Title 18, United States Code, Section 2.

## COUNT 2
### [18 U.S.C. § 1519 – Falsification Of Records In A Federal Investigation]

1. Paragraphs 1 through 18 of Count 1 of this Indictment are incorporated as if set forth in full herein.

2. The use of excessive force by a person acting under color of law, statute, ordinance, or regulation is a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI"), which is an agency within the United States Department of Justice.

3. On or about June 15, 2013, defendant STERLING WHEATEN wrote a false Supplemental Police report to falsely justify the force used against Victim #1 and to obstruct any investigation into the deprivation of Victim #1's right to be free from unreasonable seizure by one acting under the color of law, which includes the right to be free from the use of unreasonable force.

   a. As part of that report, defendant STERLING WHEATEN falsely stated, among other things, that Victim #1 was "fighting my K9 partner," "[struck] my partner with his right hand," "a further violent struggle ensued," and, in an effort to falsely justify the utilization of the K-9, that the "suspect violently assaulted uniformed law enforcement officer[s] with hands and fists . . . ."

   b. As part of the report, defendant STERLING WHEATEN, in an effort to falsely justify the closed fist punches to Victim #1, falsely stated that

he feared that Victim #1 "was going to get up and retrieve his weapon to injure us or flee the area endangering the public."

  c. As part of the report, defendant STERLING WHEATEN falsely stated that he provided first aid to Victim #1's wound until the ambulance/EMT arrived.

  4. On or about June 15, 2013, in Atlantic County, in the District of New Jersey, and elsewhere, defendant

## STERLING WHEATEN

while acting in relation to and in contemplation of a matter within the jurisdiction of the FBI, an agency of the United States, knowingly falsified, concealed, covered up and made false entries in a document with the intent to impede, obstruct, and influence the investigation and proper administration of that matter, that is, defendant authored and submitted a false and misleading official incident report, in order to create a false justification for the assault of Victim #1, with intent to obstruct any investigation into the deprivation of Constitutional Rights described in Count 1.

In violation of Title 18, United States Code, Section 1519, and Title 18, United States Code, Section 2.

A TRUE BILL

FOREPERSON

*Craig Carpenito*
CRAIG CARPENITO
United States Attorney

CASE NUMBER: 18-

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

STERLING WHEATEN

INDICTMENT FOR
18 U.S.C. § 242
18 U.S.C. § 1519
18 U.S.C. § 2

A True Bill,

_____
Foreperson

CRAIG CARPENITO
U.S. Attorney
Newark, New Jersey

JASON M. RICHARDSON
Assistant U.S. Attorney
Camden, New Jersey
(856) 757-5026

USA-48AD8
(Ed. 1/97)