

U.S. Department of Justice

*United States Attorney*
*District of New Jersey*

| | | |
|---|---|---|
| *CRAIG CARPENITO* | CAMDEN FEDERAL BUILDING & U.S. COURTHOUSE | 856/757-5026 |
| *United States Attorney* | *401 Market Street, 4th Floor* | Fax: 856/968-4917 |
| | *Post Office Box 2098* | Direct Dial: 856/968-4869 |
| *JASON M. RICHARDSON* | *Camden, New Jersey 08101-2098* | |
| *Assistant United States Attorney* | | |

October 11, 2019

Honorable Joel Schneider
United States Magistrate Judge
Mitchell H. Cohen Federal Courthouse
One John F. Gerry Plaza, Fourth & Cooper Streets
Camden, New Jersey 08101

      Re:    United States v. Sterling Wheaten
               Crim. No. 18-608 (RMB)

Dear Judge Schneider:

      Please accept this letter in support of the government's motion, made pursuant to 18 U.S.C. §§ 3142 and 3148, to revoke bail and to detain defendant Sterling Wheaten pending trial in this matter. As detailed below, the Government submits that there is probable cause to believe that the Defendant has committed a Federal, State or local crime, that is the Defendant was arrested and charged with Domestic Violence related offenses, in violation of the laws of the State of New Jersey, thereby triggering a rebuttable presumption of pretrial detention. The Defendant's conduct makes clear that (i) the Defendant has violated the condition of pretrial release set forth in the Court's October 11, 2018 bail order, see Exhibit A – Docket 9, and (ii) he presents a pressing and ongoing danger to the community.

      The evidence detailed below provides a sound basis for the Court to detain the defendant pending trial. Alternatively, the Court should modify the Defendant's bail conditions and he should placed on house arrest with electronic monitoring; his travel should be restricted to the District of New Jersey (since the victim of the Domestic Violence, Victim #2 - the mother of his child lives in the Eastern District of Pennsylvania); require that the Defendant attend anger management counseling; refrain from use of alcohol (with random testing to ensure compliance); and have no unsupervised contact with the mother of his child.

    I.    Background

      On October 10, 2018, a federal grand jury sitting in Camden, New Jersey returned a two-count Indictment against defendant Sterling Wheaten, a police officer in the Atlantic City, New Jersey Police Department ("ACPD"). Docket 1. Count One charged Wheaten with deprivation

of right under color of law by causing a police dog to attack Victim #1 and punching Victim#1 while the police dog was attached to Victim #1, which resulted in bodily injury to Victim #1, in violation of 18 U.S.C. § 242 from an incident that occurred on or about June 15, 2013.  Count Two charged Wheaten with falsifying records by submitting a false and misleading official incident report, in order to create a false justification for the assault of Victim #1, with the intent of obstructing a federal investigation into the deprivation of Victim #1's Constitutional Rights, in violation of 18 U.S.C. § 1519.

On October 11, 2018, the Defendant appeared before this Court for an arraignment and was released on a $50,000 personal recognizance bond. Docket 5.  The Court also imposed certain bail conditions.  See Order Setting Conditions of Release, dated October 11, 2018 (the "Order"), Docket 9.  Specifically, the Order states that the Defendant "must not violate any federal, state or local law while on release."  Id. ¶ 1.  The Court also restricted the Defendant's travel to the District of New Jersey and the Eastern District of Pennsylvania. Id. ¶ 7(f).

II. The Defendant Violation of the Court's Pretrial Release Order

On September 28, 2019, NJ.com reported that the Defendant was arrested and charged with crimes related to a domestic violence incident.  See Exhibit B, NJ.com article entitled "N.J. cop indicted for brutal K-9 attack last year arrested on separate charges."  According to the Margate City Police Department Incident Report Form on September 28, 2019, at approximately 1:07 a.m., police received a 911 call with a child on the phone.  When 911 attempted to call the phone back no one answered.  Law enforcement officers contacted the cellular telephone service provider and learned that the phone was located on the street where the Defendant resides.  The cellular telephone service provider also identified the subscriber of the phone.  A search of the Department's database revealed that the subscriber of the phone number was associated with previous calls for police services at the Defendant's residence in Margate.[1]  Uniformed officers were then dispatched to the Defendant's residence.  See Exhibit E Margate City PD Incident

---

[1] According to Margate City Police Department Reports on two prior occasions officers were dispatched to the Defendant's residence to conduct a health and welfare check.  The first incident occurred on September 10, 2017 after the police received a call from the Victim #2's brother asking that the police check on her after Victim #2 and the Defendant had a verbal argument.  Police officers located Victim #2 at the Defendant's residence and she was "okay" and the Defendant was at work.  See Exhibit C, Margate City PD Incident Report Form 9/10/2017, (provided to the Court, Defense Counsel and U.S. Pretrial Services, which the Government seeks permission to file under seal to preserve the privacy of the victim).  The second encounter was on February 2, 2019, when police officers were dispatched to the Defendant's residence after they received a call from Victim #2's father who reported that Victim #2 was supposed to drop her 3-year-old son off with the Defendant and she had not returned home to Pennsylvania after five hours.  Police officers located Victim #2 at the Defendant's residence and she said that she was "okay."  See Exhibit D, Margate City PD Incident Report Form 2/2/2019, (provided to the Court, Defense Counsel and U.S. Pretrial Services, which the Government seeks permission to file under seal to preserve the privacy of the victim).

Report Form 9/28/2019, (provided to the Court, Defense Counsel and U.S. Pretrial Services, which the Government seeks permission to file under seal to preserve the privacy of the victim).

Upon arrival at the Defendant's residence, Officers heard someone crying. After the officers knocked on the door several times and while asking the occupants to open the door, the door opened and the victim, Victim #2, ran out of the house crying. Victim #2 was visibly upset and advised that the Defendant grabbed and shook her; head butted her and dragged her causing her to hit her leg and open a pre-existing cut on her leg. The responding officers observed evidence of injury.[2] When the Defendant appeared at the door holding his 3-year-old son he was arrested. After consultation with the Atlantic County Prosecutor's Office, the Defendant was charged with simple assault, terroristic threats and endangering the welfare of a child.

On October 3, 2019, Margate City Police Officers served Defendant with a temporary restraining order. See Exhibit F Margate City PD Incident Report Form 10/3/2019, (provided to the Court, Defense Counsel and U.S. Pretrial Services but not filed on the docket to preserve the privacy of the victim) The temporary restraining order was granted based on the Defendant's assault of Victim #2 on September 27, 2019 when the Defendant told Victim #2 that she could not leave his residence and he locked the door, stood in her way and took her purse. During the subsequent physical incident, the Defendant grabbed her by the neck and shook her; head-butted her and dragged her across the room. She described the defendant and angry and getting into fits of rage. When the police arrived and Victim #2 was screaming, the Defendant put his hand over her mouth and threatened to "drag [her] into the bowls of the house where no one will hear you and I will take your breath."

As part of the application for the temporary restraining order, Victim #2 also described an incident on September 20, 2019, when she brought her son to the Defendant's house and was trying to work things out. After dinner, the Defendant got upset with Victim #2 because of differences in opinions on their relationship. Victim #2 described the Defendant as having a "meltdown" and he would not let her leave. The Defendant pushed Victim #2 onto the bed, got physical and said degrading things to her.

When asked if there were any history of domestic violence, either reported or unreported, Victim #2 advised that the Defendant would say awful things to her. He would get very angry and make degrading comments to her and about her family. Victim #2 also stated that the Defendant was "physical" with her in the past and described an incident when their son was an infant and the Defendant pushed her onto the bed. The Defendant had been drinking. She also described an incident when the Defendant got mad and pushed her onto the bed, pulled her hair and placed his hand over her mouth. Victim #2 was so scared that she ran out of the house and spent the night at a neighbor's house.

---

[2] Victim #2 went to Margate Police Station and was interviewed. After the interview, officers documented her injuries. See Exhibit E, pictures of Victim #2 taken by officers on 9/28/2019 (provided to the Court, Defense Counsel and U.S. Pretrial Services, which the Government seeks permission to file under seal to preserve the privacy of the victim).

III. Legal Standards

"A person who has been released under [18 U.S.C.] section 3142 . . . , and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). Under § 3148(b), bail shall be revoked if the Court "(1) finds that there is . . . probable cause to believe that the person has committed a Federal, State, or local crime while on release . . . and (2) finds that . . . (A) based on the factors set forth in [18 U.S.C.] section 3142(g) . . . , there is no condition or combination of conditions of release that will assure that the person will not . . . pose a danger to the safety of any other person or the community; or (B) the person is unlikely to abide by any condition or combination of conditions or release." Id. § 3142(e). If there is probable cause to believe that the defendant has committed a crime while on pretrial release, there is a rebuttable presumption that no condition or combination of conditions will assure the safety of the community. Id.

Accordingly, at the October 15, 2019 hearing, the Court should first determine whether there is probable cause to believe that the Defendant has committed a crime while on release. "To find probable cause, the evidence must 'warrant a man of reasonable caution in the belief' that the defendant has committed a crime while on bail.'" United States v. Gentry, 156 F.3d 1233, 1998 WL 47600, at *1 (6th Cir. 1998) (table of decisions) (quoting United States v. Gotti, 794 F.2d 773, 777 (2d Cir. 1986)); see also United States v. Hill, 95 F.3d 1153, 1996 WL 466686, at *1 (6th Cir. 1996) (table of decisions); United States v. Cantrell, 848 F.2d 194, 1988 WL 50643, at *1 (6th Cir. 1988) (table of decisions). Probable cause "is not a high bar:  It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." Kaley v. United States, 571 U.S. 320, 338 (2014) (internal quotation marks and alterations omitted).

"If the Court finds probable cause that the defendant committed a crime while on release, 'a rebuttable presumption arises that no condition or combinations will assure that the person will not pose a danger to the safety of any other person or the community.'" Hill, 95 F.3d 1153, 1996 WL 466686, at *1 (quoting 18 U.S.C. § 3148(b)). This presumption of detention reflects a congressional judgment that "'the establishment of probable cause to believe that the defendant has committed a serious crime while on release constitutes compelling evidence that the defendant poses a danger to the community.'" United States v. Jessup, 757 F.2d 378, 381-82 (1st Cir. 1985) (Breyer, J.) (quoting Senate Judiciary Committee Report, S. Rep. No. 225, 98th Cong., 1st Sess. 19 (1983), reprinted in 1984 U.S. Code Cong. & Admin. News, p. 36).

"Once the presumption is implicated, 'it is incumbent on the defendant to come forward with some evidence to rebut the presumption.'" Hill, 95 F.3d 1153, 1996 WL 466686, at *1 (quoting United States v. Cook, 880 F.2d 1158, 1162 (10th Cir. 1989)). As such, the factors in § 3142(g) "do[] not come into play unless and until the judicial officer finds under § 3148(b)(2)(B) that the defendant has overcome the statutory rebuttable presumption and concludes that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions." Cook, 880 F.2d at 1162 (internal quotation marks and emphasis omitted). And while this burden "is not heavy," the defendant must introduce at least some evidence contrary to the presumed fact in order to rebut the presumption. See United States v. Stone, 608 F.3d 939, 945 (6th Cir.

4

2010) (discussing analogous presumption under § 3142(e)(3) for defendants charged with certain specified crimes).

"[E]ven if the defendant comes forward with evidence to rebut the presumption, 'the presumption does not disappear, but remains a factor for consideration in the ultimate release or detention determination.'" Gentry, 156 F.3d 1233, 1998 WL 47600, at *1 (quoting Cook, 880 F.2d at 1162). In making this ultimate determination, the Court should "look to § 3142 to determine if conditions of release are appropriate." Hill, 95 F.3d 1153, 1996 WL 466686, at *1. As such, the Court should consider (1) the nature and circumstances of the offense, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. See 18 U.S.C. § 3142(g).

IV. Discussion

The evidence presented at the hearing will establish probable cause that the Defendant has committed crimes while on release. The Government anticipates that this evidence will be presented by way of hearsay or proffer, which is permissible in a hearing of this nature. See Stone, 608 F.3d at 948-49; 18 U.S.C. § 3142(f) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."); see also United States v. Colasuonno, 697 F.3d 164, 177 (2d Cir. 2012) (noting that "the full protections of the Confrontation Clause do not apply to preliminary hearings, bail proceedings, or sentencing" (citations omitted)); United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (per curiam) (holding that Confrontation Clause does not apply in bail hearings).

Indeed, proceeding by way of hearsay or proffer is particularly warranted in hearings where the underlying crimes involve domestic violence. "Victims of domestic violence are more prone than other crime victims to recant or refuse to cooperate after initially providing information to the police." Tom Lininger, Prosecuting Batterers After Crawford, 91 VA. L. REV. 747, 768-69 (2005). By some estimates, "[a]pproximately 80 percent of victims decline to assist the government in prosecutions of domestic violence cases." Id. at 751. Their reluctance may be based on a number of factors, including "the risk of reprisals by the batterers," the victim's "fear that her family would be unable to make ends meet if the primary breadwinner went to jail," the victim's "continued emotional attachment to batterers," and the victim's "reluctance to break up families." Id. at 769-70.

Here, the evidence shows that on September 28, 2019, while the Defendant was on release, he committed domestic violence when he grabbed the mother of his child by the neck and dragged her around the house, head butted her, pushed her down, and kept her from leaving his house. When the police arrived and she screamed, the Defendant put his hands over her mouth and told her to "be quiet" or he would take her to the basement and ensure that she remained quiet.

The existence of probable cause triggers a presumption of detention, which the Defendant has the burden to rebut. See 18 U.S.C. § 3148(b). At this point, it is unclear what evidence, if

any, the Defendant will come forward with, and whether such evidence will be sufficient to rebut the statutory presumption. But even assuming arguendo that he does rebut the presumption, detention is still warranted in this case. As noted above, detention is mandatory if, in addition to probable cause, the Court finds either that "there is no condition or combination of conditions of release that will assure that [Wheaten] will not flee or pose a danger to the safety of any other person or the community," 18 U.S.C. § 3148(b)(2)(A), or that Wheaten "is unlikely to abide by any condition or combination of conditions of release," 18 U.S.C. § 3148(b)(2)(B). Both of those tests are met here.

First, if released, the Defendant will continue to pose a serious danger to the safety of the mother of his child. She has described prior incidents of the Defendant's violent outbursts, including grabbing her, pushing her down, and keeping her from leaving the house, as well as a history of denigrating and derogatory comments directed towards her. She has also said that he gets "really angry." Moreover, "multiple studies have shown that past domestic violence is the best predictor of future abuse." Jane K. Stoever, Enjoining Abuse: The Case for Indefinite Domestic Violence Protection Orders, 67 VAND. L. REV. 1015, 1024 (2014). Indeed, "[i]ntimate partner abuse rarely consists only of a single, isolated event; instead, the abusive partner more commonly engages in an ongoing process of violence and control. . . . As violence escalates, the likelihood that the perpetrator will use a weapon against the survivor also increases, which dramatically increases the risk of lethality." Id. And while "[j]udges may assume that the danger is over if the parties have separated," victims of domestic violence in fact "face the greatest risk of acute violence and lethality during the actual separation from an abusive partner and the ensuing years. Rather than ensuring safety, leaving or attempting to leave often escalates and intensifies the violence." Id. at 1025. In light of the Defendant's characteristics specifically, and the reality of domestic violence generally, it is impossible to conclude that there is any combination of conditions that would assure that the Defendant would not pose a continuing danger to the mother of his child wife if released.

Second, the Defendant is unlikely to abide by any condition or combination of conditions of release. The conduct at issue here is not a single, isolated event, but rather a pattern of illegal behavior that demonstrates a willingness to violate the law.

V. Conclusion

The Government respectfully submits that detention is warranted here because there is probable cause to believe that the Defendant has violated the conditions of his pretrial release by committing a violent assault on the mother of his son in a Domestic Violence incident. The Defendant poses a danger to the community, and he has demonstrated that he is unlikely to abide by the conditions of his release.

For all of the foregoing reasons, the Government respectfully requests that the Court enter an order revoking defendant Sterling Wheaten's bail or, alternatively, imposing house arrest with electronic monitoring, limit his travel to the District of New Jersey, require that he attend anger management counseling, refrain from the use of alcohol (with random testing to ensure compliance), no unsupervised contact with Victim #2.

Thank you for your attention to this matter.

          Respectfully submitted,

          CRAIG CARPENITO
          United States Attorney

          ***S/Jason M. Richardson***
          JASON M. RICHARDSON
          Assistant U.S. Attorney

Cc:    Louis M. Barbone, Esquire (via email)
        Stacy Ann Biancamano, Esquire (via email)
        Naliah Green, U.S. Pretrial Service Officer (via email)