UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff | CASE NO. 18-608 (RMB) |
| v. | |
| STERLING WHEATON | |
| Defendant | |

**DEFENDANT WHEATEN'S BRIEF IN OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE**

Louis M. Barbone, Esquire (N.J. Attorney ID# 014891986)
JACOBS & BARBONE, P.A.
A Professional Corporation
Attorneys at Law
1125 Pacific Avenue
Atlantic City, New Jersey 08401
(609) 348-1125
Attorneys for Defendant
lbarbone@jacobsbarbone.law

Stacy A. Biancamano, Esq.
Biancamano Law, LLC
312 North Avenue E, Suite 7
Cranford, NJ 07016
(908)325-3023
sbiancamano@biancamanolaw.com

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Introduction | 1 |
| Legal Argument | 1 |
| Point I | 1 |

The Court Is Not In A Position To Predict What Testimony Is Relevant With Regard To Castellani's Actions Before Wheaten's Arrival.

Point II — 4

The Government Misapprehends The Relevance And Admissibility Of 404(a) Evidence Against Castellani In Arguing Exclusion Pursuant To R. 403.

Point III — 5

If Wheaten Seeks To Offer Out Of Court Statements, He Must Establish The Basis Of Admissibility – There Is No Dispute.

Point IV — 6

The Government's Motion To Bar Expert Opinion Testimony Is Likewise Premature And Not Capable Of Resolution Until Experts Testify.

Point V — 7

Character Evidence In The Form Of Opinion Testimony Or Testimony Regarding Ofc. Wheaten's Reputation For Truthfulness Does Not Permit The Use Of A Civil Jury's Finding That Ofc. Wheaten Used Excessive Force In Effectuating An Arrest In 2008 For Impeachment Purposes.

Point IV — 10

The Government's Motion Seeking To Preclude Any Reference To Possible Punishment Or Collateral Consequences Of Conviction Must Be Denied.

# TABLE OF CONTENTS

| | Page |
|---|---|
| Introduction | 1 |
| Legal Argument | 1 |
| Point I | 1 |

The Court Is Not In A Position To Predict What Testimony Is Relevant With Regard To Castellani's Actions Before Wheaten's Arrival.

| Point II | 4 |
|---|---|

The Government Misapprehends The Relevance And Admissibility Of 404(a) Evidence Against Castellani In Arguing Exclusion Pursuant To R. 403.

| Point III | 5 |
|---|---|

If Wheaten Seeks To Offer Out Of Court Statements, He Must Establish The Basis Of Admissibility — There Is No Dispute.

| Point IV | 6 |
|---|---|

The Government's Motion To Bar Expert Opinion Testimony Is Likewise Premature And Not Capable Of Resolution Until Experts Testify.

| Point V | 7 |
|---|---|

Character Evidence In The Form Of Opinion Testimony Or Testimony Regarding Ofc. Wheaten's Reputation For Truthfulness Does Not Permit The Use Of A Civil Jury's Finding That Ofc. Wheaten Used Excessive Force In Effectuating An Arrest In 2008 For Impeachment Purposes.

| Point VI | 9 |
|---|---|

The Government's Motion Seeking To Preclude Any Reference To Possible Punishment Or Collateral Consequences Of Conviction Must Be Denied.

Point VII                                                                                      11

    Whether The Court Will Allow The Government To Treat Witnesses
    As Hostile, **If** They Are Hostile, Is Within The Court's Discretion.

Point VIII                                                                                     12

    The Government's Motion to Prevent Law Enforcement Officers Attending
    Trial From Wearing Uniforms or Other Recognizable Items Should be
    Denied but Law Enforcement Officers Testifying at Trial Should be
    Precluded From Wearing Uniforms or Other Recognizable Items

## TABLE OF AUTHORITIES

| Case | Page |
|---|---|
| Apprendi v. United States, 430 U.S. 466, 490 (2000) | 10 |
| Colvin v. Powers, 2008 W.L. 2397332 *7 | 3 |
| Graham v. Connor, 490 U.S. 386, 396-97 | 1 |
| of Holbrook v. Flynn, 475 U.S. 560, 570-571 (1986) | 12 |
| Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948) | 4,8,9 |
| State v. Aguiar, 322 N.J. Super. 175 (App. Div. 1999) | 3,4 |
| United States v. Curtis, 664 F.2d 263, 268(3d Cir. 1981 | 8 |
| United States v. Edwards, 266 F. Supp. 3d 1290 (D.N.M. 2017) | 11 |
| United States v. Hayes, 369 F.3d, 564 (D.C. Cir. 2004) | 5 |
| United States v. Herman, 589 F. 2d 1191, 1197 (3d Cir. 1978) cert. denied, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386(1979) | 8 |
| U.S. v. Keiser, 57 F.3d at 847 (9th Cir.), cert. denied 516 U.S. 1029, 116 S.Ct. 676, 133 L.Ed. 2d 525 (1995) | |
| United States v. Lechoco, 542 F.2d 84, 8788 (D.C. Cir. 1976) | 8 |
| United States v. Polizzi, 549 F. Supp. 2d 308, 426 (E.D.N.Y. 2008) | 10 |
| United States v. Polizzi, 564 F.3d 142 (2d Cir. 2009) | 10 |
| United States v. Stevens, 935 F.2d 138 (3d Cir. 1991) | 6 |
| United States v. Walker, 677 Fed. Appx. 53, 57 (2017) | 9 |
| Woods v. Dugger, 923 F.2d 1454 (11th Cir. 1991) | 12,13 |

Rules & Statutes

| | |
|---|---|
| R. 106 | 5 |
| R. 403 | 9 |
| R. 404(a)(2)(B) | 2 |
| R. 405 | 3 |
| R. 405(a) | 3 |
| Rule 405(b) | 3 |
| R. 701 | 7 |
| R. 702 | 7 |
| Rule 704 | 6 |
| R. 704(b) | 7 |

## INTRODUCTION

The Government moves in limine for advisory and preemptory evidential rulings by the Court without specifying or even itemizing the witnesses and evidence it intends to introduce in its case in chief. It instead presents information existing in the discovery record and asks the Court to predict its rulings in a vacuum. For that reason, the Court should deny without prejudice each of the Government's premature arguments.

## POINT I

THE COURT IS NOT IN A POSITION TO PREDICT WHAT TESTIMONY IS RELEVANT WITH REGARD TO CASTELLANI'S ACTIONS BEFORE WHEATEN'S ARRIVAL.

The Government's first request is for the Court to:

> . . . not permit the jury to consider Castellani's behavior that was unknown to Wheaten before he allowed his police dog to attack Castellani.

(Government's brief, p7).

While the defense does not contest the proposition that Wheaten's conduct must be judged pursuant to the totality of circumstances of which he was aware, that in no way answers the question as to what conduct of Castellani may be relevant in the context of evidence and testimony presented by the Government.

In its brief to dismiss the indictment, specifically Legal Argument, Point I, beginning at page 14, defendant reviewed the essential elements of the crimes charged, the Government's burden of proof with regard to those elements and the standard of objective reasonableness that will form the basis of the Court's instruction to the jury. As the Supreme Court explained in Graham v. Connor, 490 U.S. 386, 396-97:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . The Fourth amendment is not violated by an arrest

> based on probable cause, even though the wrong person is arrested, . . . nor by the mistaken execution of a valid search warrant on the wrong premises, . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" . . . violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain and rapidly evolving -- about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one:  the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. . .   An officer's evil intentions will not make a Fourth amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional. . .

As such, it is the facts and circumstances which confronted the officer and which he knew by virtue of his five senses at the time he deployed force. Nonetheless, the question of what is relevant with regard to the actions of Castellani may not be confined to the view of Ptl. Wheaten, if there is testimony adduced from any one of five other police officers on scene and depicted in the video the Government will play. Beyond those basic principles, the Court can determine no more.

The Government's true concern is the fact that prior to Wheaten's arrival on scene, Mr. Castellani was verbally abusive, threatening, and then perpetrated an aggravated assault upon Atlantic City police officers. As such, it is the very conduct of the alleged victim that would permit evidence of his "pertinent traits" including his propensity and display of violence. Pursuant to R. 404(a)(2)(B):

> Exceptions for a defendant or a victim in a criminal case. The following exceptions apply in a criminal case:

2

> (B) Subject to the limitations in R. 412, a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted, the prosecutor may:
>
>> (i) offer evidence to rebut it; and
>> (ii) offer evidence of the defendant's same trait; . . .

Pursuant to R. 405, the methods for proving that character would be by reputation or opinion (a) or by specific instances of conduct (b). As Evidence Rule 405(b) provides:

> When a person's character or character trait is an essential element of a charge, claim or defense, the character or trait may also be proved by relevant specific instances of the person's conduct.

In State v. Aguiar, 322 N.J. Super. 175 (App. Div. 1999), the Appellate Division explained that where a defendant may be justified in the use of self-protective force, the victim's character of violence and aggression is relevant even if it is unknown by the defendant:

> We thus conclude that a victim's conviction of a violent crime may be admitted to establish that he was the aggressor. The relevance of victim character evidence in assaultive crime cases stems from its making it more likely that the victim was in fact using unlawful force – a proposition that, if true, would give rise to the defendant's justified use of self-protective force - rather than its bearing on the defendant's state of mind. Personal knowledge of the victim's propensity for violence is not a prerequisite for admission of victim character evidence under N.J.S.A. 404(a)(2). . . .

Ibid., 332 N.J. Super. at 183-184; see also, Colvin v. Powers, 2008 W.L. 2397332 *7. (Exhibit A).

Beyond specific instances of conduct, R. 405(a) provides for opinion or reputation testimony to establish the character trait of the victim. And while the New Jersey Evidence Rule prohibits the use of specific instances of conduct to prove a victim's propensity, the federal Rule does not. In U.S. v. Keiser, 57 F.3d at 847 (9th Cir.), cert. denied 516 U.S. 1029, 116 S.Ct. 676, 133 L.Ed. 2d 525 (1995), the Circuit ruled that:

3

>R. 404(a)(2) provides one of the few instances in which character evidence is admissible to allow the jury to infer that a person acted on a specific occasion in conformance with his character.

Id. at 854.

The Court reasoned that "the very purpose of victim character evidence is to suggest to the jury that the victim did indeed act in conformity with his violent character at the time of the alleged crime against him". Ibid. And as the 9th Circuit explained:

> . . . the purpose is not to provide insight into the reasonableness of the thought processes of the defendant . . . Thus, whether the defendant knew of the victim's character at the time of the crime has no bearing on whether victim character evidence should come in under §404(a)(2).

Ibid.

Indeed, the Appellate Division in State v. Aguiara, noted that the federal courts were unanimous in holding that a victim's character is admissible to show that the victim was the aggressor. (322 N.J. Super. at 183). Finally, even assuming the method of proving an applicable character trait is by reputation witnesses, particular instances of conduct pertinent to the trait in question, would be admissible from those reputation witnesses. Mitchelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed 168 (1948).

## POINT II

THE GOVERNMENT MISAPPREHENDS THE RELEVANCE AND ADMISSIBILITY OF 404(a) EVIDENCE AGAINST CASTELLANI IN ARGUING EXCLUSION PURSUANT TO R. 403.

The Government next argues that even if Castellani's conduct prior to Wheaten's arrival has some "tangential relevance", the Court should exclude it. The Government's argument does not consider or recognize the underlying purpose of character trait evidence against the victim. It is as aforestated, unconnected with the proposition that Wheaten had to see it in order for it to be relevant.

4

Alternatively, the conduct of Castellani is not "unduly prejudicial". It is the equivalent of the defense arguing that because Wheaten observed the same level of force being exerted against Castellani by five other police officers in the form of kicking, punching and baton strikes, his use of the canine should be excluded by the Court on 403 grounds because it is "unduly prejudicial". In a strict academic use of force analysis, Wheaten did just what five other police officers deemed reasonable, utilized escalating physical force and then mechanical force to restrain and contain a physically violent and resisting Castellani. The nature, extent, consistency and duration of violence and resistance by Castellani is undeniably relevant to any officer's reasonable assessment of force necessary. The probative value of that evidence is not merely to establish what can be seen on the video, it is likewise to establish the propensity and potential strength, violence and resistance that Castellani was capable of. There is nothing "unfairly prejudicial" about proving the true factual circumstances confronted by police officers on the scene required to make split-second decisions about the appropriate use of force.

## POINT III

IF WHEATEN SEEKS TO OFFER OUT OF COURT STATEMENTS, HE MUST ESTABLISH THE BASIS OF ADMISSIBILITY – THERE IS NO DISPUTE.

Whether it is the rule of completeness, namely R. 106 or another Rule of Evidence, Wheaten understands the evidential concepts reviewed by the Government. Depending on what portions of Wheaten's statements are moved by the Government, portions of Wheaten's statement may be properly admitted depending upon their capacity to rebut, disprove or place particular statements in context. For example, United States v. Hayes, 369 F.3d, 564 (D.C. Cir. 2004), where the defendant's out of court statement on a

5

telephone call where he said to "tell the truth" was deemed admissible in response to a partial recording played by the Government. Likewise, the potential for reverse 404b evidence, United States v. Stevens, 935 F.2d 138 (3d Cir. 1991).

The Government's motion however, remains broad and undefined without any specification as to what statements, if any, it intends to introduce against Wheaten. As such, it is unreasonable to request the Court to make preemptory rulings without the context of testimony at trial.

POINT IV

THE GOVERNMENT'S MOTION TO BAR EXPERT OPINION TESTIMONY IS LIKEWISE PREMATURE AND NOT CAPABLE OF RESOLUTION UNTIL EXPERTS TESTIFY.

Here, the Government argues rather sheepishly, that if its expert Dr. Mesloh testifies, he can't be confronted with the fact that he determined Wheaten committed no crime or even a civil wrong. The Government frames it in terms of Mesloh potentially giving a "legal opinion".

Pursuant to Evidence Rule 704, an expert's opinion on the ultimate issue is not prohibited:

> (a) An opinion is not objectionable just because it embraces an ultimate issue.
> (b) Exception. In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

And while the defense agrees that Dr. Mesloh or any other potential expert is not permitted to give a "legal opinion", the precise metes and bounds of his testimony will dictate his cross-examination without the the solicitation of "legal opinions". The relevant inquiry as to any expert pursuant to R. 701 and R. 702 is whether the opinions are helpful

to the trier of fact. The examination of the expert is not for the purpose of telling the jury what results it should reach, but instead what underlying facts and circumstances are identified and consistent with or inconsistent with police training, use of force policy and an expert's conclusion on necessity of force. Whether those opinions include appropriate comment by an expert on whether in his opinion the subject conduct was necessary or illegal, does not run afoul of the 704(b) exception. The Rule's preclusion is specific with regard to whether an expert opines on the mental state or condition of the defendant that constitutes the element of the crime charged or the defense. That is not the equivalent of expressing a "legal opinion".

Nonetheless, if the expert's opinion is merely to express a belief on the defendant's guilt or innocence, it surely would not be helpful to the jury. If however by virtue of the direct testimony of the witness, the underlying elements or bases of the opinion lead to a conclusion of appropriate or even a mistaken use of force, that may indeed be admissible. Once again, the Court's evaluation and decision must be contextual.

## POINT V

CHARACTER EVIDENCE IN THE FORM OF OPINION TESTIMONY OR TESTIMONY REGARDING OFC. WHEATEN'S REPUTATION FOR TRUTHFULNESS DOES NOT PERMIT THE USE OF A CIVIL JURY'S FINDING THAT OFC. WHEATEN USED EXCESSIVE FORCE IN EFFECTUATING AN ARREST IN 2008 FOR IMPEACHMENT PURPOSES.

Ofc. Wheaten is alleged to have falsified his report. Therefore, evidence of his honesty by reputation and opinion is clearly admissible at trial pursuant to Fed. R. Evid. 405(b). However, such character evidence does not permit the Government on cross-examination to delve into specific instances of Ofc. Wheaten allegedly utilizing excessive force, i.e. the civil jury finding from 2008.

7

Prior alleged specific instances of excessive force are not pertinent to Ofc. Wheaten's good character for truthfulness and honesty. Direct examination of reputation and opinion testimony of Ofc. Wheaten's veracity does not open the door to Ofc. Wheaten supposedly using excessive force on prior occasions. "Relevant specific instances of conduct are only instances going to the accuracy of the character witness's testimony." United States v. Curtis, 664 F.2d 263, 268(3d Cir. 1981), citing United States v. Herman, 589 F. 2d 1191, 1197 (3d Cir. 1978) cert. denied, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386(1979).

Ofc. Wheaten is permitted to limit his character witnesses to only testifying about his character trait of truthfulness. See Curtis at 268 ("an accused may advance more than one character trait as evidence, so long as each of those traits are germane to some issues in the trial). Consequently, the United States is prohibited from crossing any of Ofc. Wheaten's character witnesses about their knowledge regarding any prior use of force. See Id. ("Obviously cross examination must be confined to matters bearing on the particular character trait to which the witness testified. Impeachment of a witness who testified as to reputation for non-violence, for instance, should not open the door to cross examination about specific instances of lying"), citing Michelson v. United States, 335 U.S. 469, 476-76, 69 S.Ct. 213, 218 (1948); United States v. Lechoco, 542 F.2d 84, 8788 (D.C. Cir. 1976).

"If…their direct testimony is addressed to community reputation, inquiry may be made about conduct, and even about charges, which may have come to the attention of the relevant community." Id., citing Michelson. Notably, none of the character witnesses Ofc. Wheaten intends to offer at trial are Atlantic City Police Officers. "If…opinion

evidence is offered in proof of character, relevant cross examination is only that which bears on the fact or factual basis for formation of the opinion." Id.  Prior claimed excessive force incidents would have zero bearing on non-ACPD character witnesses' basis for formation of their respective opinions of Ofc. Wheaten being truthful. Thus, direct character reputation and opinion testimony of non-ACPD officers does not open the door for inquiry as to knowledge of claimed prior uses of excessive force.

Fed R. Evid. 403 provides "[a] court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury…" "' [P]rejudice against which the law guards is only 'prejudice of the sort which clouds impartial scrutiny and reasoned evaluation of the facts, which inhibits neutral application of principles of law to the facts as found.'" United States v. Walker, 677 Fed. Appx. 53, 57 (2017) (quotation omitted).

Essentially, the Government's request, if granted, would require a mini-trial regarding the prior act, thereby confusing the jury about what is actually at issue in this case, namely, the use of force with respect to Castellani. Such prior act evidence would unfairly prejudice Ofc. Wheaten as the jury's impartial scrutiny with regard to the reasonableness of force utilized with respect to Castellani would be clouded by prior alleged incidents. Accordingly, the Government's request should be denied.

### POINT VI

THE GOVERNMENT'S MOTION SEEKING TO PRECLUDE ANY REFERENCE TO POSSIBLE PUNISHMENT OR COLLATERAL CONSEQUENCES OF CONVICTION MUST BE DENIED.

The Government argues that the defense should be precluded from referring to either the penalty, possible sentence, sentencing range or possible collateral

consequences that Ofc. Wheaten may face if convicted. Allowing reference to potential punishment and collateral consequences is a natural extension of the increasing role of the jury regarding facts that trigger mandatory minimum sentences in the federal criminal system as recognized by Apprendi v. United States, 430 U.S. 466, 490 (2000) (holding that juries must find all facts other than the existence of a prior conviction which increase the defendant's punishment beyond the statutory minimum), and its progeny.

> Those who would limit the powers historically exercised by juries must now consider the Supreme Court's Booker-Apprendi line of sentencing decisions, see United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its reinvigoration of the Confrontation Clause in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). These decisions bear on the question of whether juries should be informed of the sentences that would result from guilty verdicts. They emphatically reaffirm three propositions that support the argument that juries can be trusted with this information. Frist, the right to a jury trial is a fundamental constitutional right; it provides a check on the courts, executive and legislature equivalent to that of the voter on elected officials. Second, the Supreme Court is willing to overturn long-established federal law, with some measure of reasoned disregard for the consequences of doing so, when it determines that precedent impinges on the powers historically exercised by juries (or, in Crawford, the historical scope of the confrontation right). These three principles make it inappropriate to cavalierly and without analysis treat jurors' power to refuse to convict (or to be informed of mandatory minimums) as improper.

United States v. Polizzi, 549 F.Supp. 2d 308, 426 (E.D.N.Y. 2008), vacated sub nom. United States v. Polizzi, 564 F.3d 142 (2d Cir. 2009).

Comparably, in United States v. Edwards, 266 F. Supp. 3d 1290 (D.N.M. 2017), the District Court, while reluctantly granting the Government's motion to prevent the defense from discussing sentencing matters in front of the jury based on the current state of the law at the time, stated in its opinion that:

> The Court concludes that Supreme Court and Tenth Circuit precedent allowing the jury to know about sentencing ramifications only if its

10

> participation in sentencing is required, and precedent preventing the jury from learning about its nullification right, are inconsistent with trial practices at the Founders' time, and that these practices have eroded the Sixth Amendment jury trial right as the Framers understood that right. **Nevertheless, because, as a district court, the Court must faithfully apply controlling Supreme Court and Tenth Circuit precedent, the Court will grant the United States' motion to prevent Edwards from discussing sentencing related issues in front of the jury during trial.**

United States v. Edwards, 266 F. Supp. 3d at 1291-1292 (bold added).

In view of the foregoing, it is respectfully submitted that the Government's Motion to preclude references to possible punishment or collateral consequences should be denied.

## POINT VII

**WHETHER THE COURT WILL ALLOW THE GOVERNMENT TO TREAT WITNESSES AS HOSTILE, IF THEY ARE HOSTILE, IS WITHIN THE COURT'S DISCRETION.**

The Government seeks no automatic permission to treat any witness as hostile, but simply anticipates potential hostility. Once again, the Court can only evaluate the issue upon receipt of testimony at trial. It is important to note however, that every police witness referred to by the Government has voluntarily cooperated and provided extensive interviews and testimony. None of them appear to be hostile.

## POINT VIII

**THE GOVERNMENT'S MOTION TO PREVENT LAW ENFORCEMENT OFFICERS ATTENDING TRIAL FROM WEARING UNIFORMS OR OTHER RECOGNIZABLE ITEMS SHOULD BE DENIED BUT LAW ENFORCEMENT OFFICERS TESTIFYING AT TRIAL SHOULD BE PRECLUDED FROM WEARING UNIFORMS OR OTHER RECOGNIZABLE ITEMS.**

The Government seeks to prevent any law enforcement officers attending the trial from wearing their uniforms or other recognizable items in the courtroom. In support of its

Motion, the Government relies on the Supreme Court case of Holbrook v. Flynn, 475 U.S. 560, 570-571 (1986) quoting in its brief the following, "We do not minimize the threat that a roomful of uniformed and armed policemen might pose to ... chances of receiving a fair trial." Id. Notably, the Government omits what the defense views as key language from the quotation. The Court's actual statement was "We do not minimize the threat that a roomful of uniformed and armed policemen might pose to *a defendant's* chances of receiving a fair trial." (italics added). Interestingly, despite the Government's reliance on the case, the Court in Holbrook actually held that four uniformed State Troopers sitting in the front row of the gallery in the courtroom to supplement customary security did not prejudice the jury, particularly in light of appropriate voir dire responses during jury selection indicating that the presence of uniformed troopers would not affect the defendants' ability to receive a fair trial. Like the Court in Holbrook, the Court in Woods v. Dugger, 923 F.2d 1454 (11th Cir. 1991) was not concerned with prejudice to the government, but rather with prejudice against the *defendant.* The Court in Woods stated: "[W]e hold that he record demonstrates that the pretrial publicity combined with the large number of uniformed spectators rose to the level of inherent prejudice, thereby depriving the petitioner [defendant Woods] of a fair trial." Woods v. Dugger, 923 F.2d 1454, 1460 (11th Cir. 1991).

Obviously, neither Ofc. Wheaten nor defense counsel have any control over who attends a public trial of this nature, or what they wear. Still the Government's request highlights greater concerns for the defense. The Government's case will undoubtedly rely heavily on the testimony of law enforcement officers. That being the case, the defense's

12

concern is not with the attire of spectators in the gallery, but with that of law enforcement officers testifying as prosecution witnesses.

In view of the foregoing, Defendant Ofc. Sterling Wheaten respectfully requests by way of cross-motion that the Court prohibit law enforcement officers from testifying in uniform, or from returning to the courtroom at any time during the trial, including to attend closing arguments, wearing any item (uniform, badge, or otherwise) that would identify them as law enforcement personnel to the average jury member.

Respectfully submitted,

Jacobs & Barbone, PA

/s/ Louis M. Barbone

Biancamano Law Firm

/s/ Stacy A. Biancamano

Dated: 3/23/20